JAMES H. RICE *vs.* BOSTON AND MAINE RAILROAD.

Essex. May 9, 1951. — June 6, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Negligence,* Contributory, Grade crossing. *Railroad,* Grade crossing.

Evidence of all the circumstances in which a pedestrian was struck by a locomotive while slowly walking over railroad tracks at a grade crossing with a city street after observing that the gates over the sidewalk were up, that the gate tender was standing near by, that other pedestrians and a vehicle were on the crossing and that no train was within his view when twice he looked, and without having heard any train approaching, required submission to the jury of the question of contributory negligence on his part in an action by him against the railroad to recover for the injuries he sustained.

TORT. Writ in the Superior Court dated November 3, 1947.

The action was tried before *Fairhurst,* J.

*F. P. Garland,* for the defendant.

*J. R. Kewer,* (*J. M. Hogan* with him,) for the plaintiff.

COUNIHAN, J. This is an action of tort for personal injuries arising out of an accident on August 19, 1947, while the plaintiff was crossing on foot the tracks of the defendant at Spencer Street, Lynn. The plaintiff's amended declara-

tion contains four counts. Counts 1 and 4 are based on failure to give signals as required by G. L. (Ter. Ed.) c. 160, § 138, as amended. Count 2 alleges negligence in the operation of the locomotive. Count 3 is based on negligence of the gate tender of the defendant. The case was tried to a jury. At the close of the plaintiff's evidence the defendant rested and its motion for directed verdicts on all counts was allowed as to counts 1 and 4. The jury returned a verdict for the defendant on count 2 and a verdict for the plaintiff on count 3. The action is here upon the defendant's exception to the denial of its motion for a directed verdict on count 3 and the exceptions of the plaintiff to the direction of verdicts for the defendant on counts 1 and 4.

The only question argued by the defendant in support of its exception is that of contributory negligence on the part of the plaintiff.

Since the adoption of the statute in 1914, now G. L. (Ter. Ed.) c. 231, § 85, as appearing in St. 1947, c. 386, § 1, contributory negligence is an "affirmative defence to be . . . proved by the defendant." The plaintiff makes out a case for the jury by proving injury and damage due to the negligence of the defendant unless "facts which are undisputed or indisputable" or "evidence by which the plaintiff is bound" shows that contributory negligence is the only rational inference. *Duff* v. *Webster*, 315 Mass. 102, 103.

With these settled principles in mind we summarize the evidence which in our opinion required the submission to the jury of the issue of contributory negligence. The railroad crossing at this point on Spencer Street is at grade and Spencer Street runs north and south and the tracks east and west. There are two main tracks, the southerly one outbound and the northerly one inbound. North of these a spur track, which curves out of the railroad location, crosses Spencer Street and runs into a yard of the General Electric Company on the easterly side where it divides into branches. The space between the rails of the tracks is planked and the area between the tracks is level and paved with gravel and asphalt. Crossing gates with arms which when down swing

over the sidewalk are located about four feet north of the spur track and about six feet south of the outbound track. The distance between these gates is about sixty-three and one half feet. The stand operating the gates is located on the easterly side of the crossing, about eight to ten feet north of the inbound track and about three feet from the gate tender's shanty. It is about twenty-eight and one half feet from the spur track to the inbound track.

The plaintiff, a disabled veteran, was forty years old and familiar with this crossing. He had good hearing and good vision in his left eye, but his right eye was impaired and with it he could see not over a couple of hundred feet. On the day of the accident his legs and back were troubling him so that he was walking slowly. As he approached the crossing walking in this manner in a southerly direction he observed that the gates were up and he saw two men standing at the shanty, one of whom he recognized as the gate tender. About this time a child passed over the crossing ahead of him. When he reached the crossing he looked to his right and saw nothing although he could see about four hundred to five hundred feet down the tracks. As he crossed the spur track he heard considerable noise to his left and upon looking he noticed that engines and railroad cars were being shifted around in the yard of the General Electric works. At that time an automobile passed over the tracks on his left moving in the same direction as he was and two men were walking over the tracks toward him. He continued walking along and looked to his right for the second time when he was about half way across. Because of the glare of the sun he could see for a distance of only two hundred to three hundred feet, and he saw nothing. The next thing which attracted his attention was the lowering of the gates. This occurred when he was on the inbound track or between the tracks. He looked to his left to observe the gate tender, "wondering what was going on because it did surprise me." When he was between the tracks or had reached the outbound track, he looked to his right for the third time and he

saw the locomotive coming out of the sun's glare about twenty-five feet away from him. "His brain just froze and he didn't remember any more until he came to, in the Lynn Hospital." At no time did he hear the sound of the locomotive bell. The engineer of the locomotive testified that at the time of the accident the steam was shut off and the train was drifting or coasting. Under these conditions, he said, the train does not make as much noise as when steam is pushing the engine. It is agreed by the parties that the plaintiff was on the defendant's tracks at the time of the accident as an invitee.

The rule applicable to railroad crossing cases is stated in *Sullivan* v. *Boston & Maine Railroad*, 242 Mass. 188, at page 192, to be as follows: "A railroad crossing is universally recognized as a place of danger and a person approaching one is bound to exercise ordinary care and prudence for his safety. Generally he must look and listen in such a manner as will enable him to see or hear an approaching train if one is within the range of his sight or hearing. But there is no absolute requirement of law which obliges him in any event to stop, look, and listen. There may be circumstances which will excuse him from looking and listening." *Clark* v. *Boston & Maine Railroad*, 164 Mass. 434, 438–439. *Fitzhugh* v. *Boston & Maine Railroad*, 195 Mass. 202, 204. *Morrissey* v. *Boston & Maine Railroad*, 216 Mass. 5, 6–7.

In the present case the plaintiff could rely to a certain extent upon the fact that the gates were up. He was not justified in relying wholly upon that fact but was required to make reasonable use of his faculties in order to ascertain whether a train was approaching. *Warren* v. *Boston & Maine Railroad*, 163 Mass. 484, 486. *Lane* v. *Boston & Maine Railroad*, 288 Mass. 277, 283. That the gates were up was a factor which the jury could properly consider in passing upon the question of contributory negligence.

Here it cannot be held that the plaintiff relied solely upon the employees of the defendant doing their duty for it is plain that he actively exercised his own faculties of sight, hearing and a sense of ordinary caution. There is ample

evidence of this in that the plaintiff before starting to cross the tracks observed the gate tender standing outside of the shanty apparently on the job. He stopped and looked to his right three times, once when he could see for four hundred to five hundred feet and again when he could see for two hundred to three hundred feet, and he saw no approaching train either time. He heard no sound of the bell on the locomotive. The operation of the engines and railroad cars in the adjacent yard was very noisy. The train was drifting or coasting because the steam was shut off and it was making less noise than it ordinarily made when steam was pushing the engine. The glare of the sun limited his vision to some extent but the accident could have been avoided if the locomotive had been within his view when he looked the first or second time. When he looked the third time the locomotive was only twenty-five feet away and he could do nothing. While not decisive, the fact that the plaintiff saw other traffic on the crossing, both pedestrian and vehicular, may be taken into consideration in determining what care and caution the plaintiff exercised. It may well be that considered alone none of these factors would be sufficient to prevent a ruling that the plaintiff was not exercising ordinary care and caution in crossing the tracks on this occasion. But in any event, where a combination of these factors is present, the question of due care of the plaintiff is for the jury. *Morrissey* v. *Boston & Maine Railroad,* 216 Mass. 5, 6–7. *Sullivan* v. *Boston & Maine Railroad,* 242 Mass. 188, 193. See *Warren* v. *Boston & Maine Railroad,* 163 Mass. 484, 486; *Lane* v. *Boston & Maine Railroad,* 288 Mass. 277, 283 (gate cases); *Tilton* v. *Boston & Albany Railroad,* 169 Mass. 253, 256; *Fitzhugh* v. *Boston & Maine Railroad,* 195 Mass. 202, 205 (negligence of signalmen); *Wheelock* v. *Boston & Albany Railroad,* 105 Mass. 203, 207–208 (presence of other traffic); *Randall* v. *Connecticut River Railroad,* 132 Mass. 269, 272; *Tilton* v. *Boston & Albany Railroad,* 169 Mass. 253, 255–256; *Dalton* v. *New York, New Haven & Hartford Railroad,* 184 Mass. 344, 347 (obstructions to vision); *Kilburn* v. *New York,*

*New Haven & Hartford Railroad,* 218 Mass. 493, 494–495 (noises which prevent hearing approach of train).

We have examined with care the cases brought to our attention by the defendant and we find none in conflict with the result which we have here arrived at. Many of them were decided because of G. L. (Ter. Ed.) c. 90, § 15, as amended, which has particular application to precautions to be exercised by operators of automobiles at railroad crossings. In others the facts are plainly distinguishable from those here present.

The verdict for the plaintiff on the third count must stand. In view of this conclusion we need not consider the exceptions of the plaintiff. They are dismissed. The entry should be

> *Defendant's exceptions overruled.*
> *Plaintiff's exceptions dismissed.*